Marcus S. Bourassa (SBN 316125)
E: MBourassa@McKenzieScott.com
**McKENZIE SCOTT, PC**
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
Facsimile: (619) 202-7461

*Attorneys for Defendant Bryan Fleming*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 3:26-cr-00019-CAB |
|---|---|
| Plaintiff, | **BRYAN FLEMING'S SENTENCING MEMORANDUM** |
| vs. | |
| BRYAN FLEMING, | Date: April 3, 2026<br>Time: 9:00 a.m.<br>Courtroom: 15A |
| Defendant. | |
| | Hon. Cathy Ann Bencivengo |

Bryan Fleming accepted responsibility for his crime more than *three years ago* when, on December 7, 2022, he first learned part of his business was illegal. He did what many do not: he admitted wrongdoing immediately and began fixing it that same day. He is a 54-year-old first-time offender, a husband and father who homeschools his sons, and someone who abandoned this crime years before prosecutors asked him to plead guilty in the summer of 2025.

The Guidelines place this case at the lowest possible range—and expressly favor a non-custodial sentence. Indeed, Congress's shared judgment is that courts should impose sentences that reflect "the general appropriateness of imposing a sentence other than imprisonment" in cases like this. 28 U.S.C. § 994(j).

A sentence of time served followed by a year of supervision is sufficient.

//

//

## I.     BRYAN FLEMING'S BACKGROUND.

### A. Background and Upbringing.

Mr. Fleming was raised in a close, stable, two-parent household. His father worked in the automotive industry, and his mother worked in an administrative role at a dental office. PSR ¶ 51. His parents remain married and his mother recently went into remission from breast cancer. *Id.*

As his mother Barbara writes, he was a good student who participated in Cub Scouts, Boy Scouts, T-ball, soccer, and the computer club, and who at age thirteen began delivering newspapers before taking a job at McDonald's – where he worked for several years. Barbara Fleming Letter. Later, supporting himself through college, he spent "long hours working at Little Caesars Pizza." Todd Fleming Letter.

The family regularly gathered for Sunday dinners and participated in community service. *Id.* His brother Todd describes Bryan as the one who the family "could depend on." *Id.*

Todd, one of his closest friends, recalls a childhood of BMX racing and making music together, and a brother who was always the steadying voice:

> When the rest of us were about to do something foolish, he was usually the one reminding us it probably wasn't a good idea.

*Id.* "Throughout my life, my brother Bryan has been a dependable, thoughtful, and level-headed person. I trust him completely." *Id.*

Todd also offers an illustrative example. When the two were young and accidentally started a fire in a field while launching a model rocket, the other boys stayed and tried to handle it themselves. Bryan immediately went for help, even if they would get in trouble. Three fire trucks arrived. *Id.* It was, as his brother reflects, a moment that revealed something about Mr. Fleming: once he recognizes a situation is serious, he takes responsibility and does what needs to be done. *Id.*

### B. Marriage and Family.

Mr. Fleming has been married to Sherry Fleming for 20 years. PSR ¶ 60.

They have two sons, Grant, age 18, and Owen, age 17, both of whom live with their parents. *Id.* By all accounts the family is exceptionally close.

Sherry writes that the family begins each day together, works together, and has dinner together every night. Sherry Fleming Letter at 2. Bryan has led the homeschooling of his sons for the past six years, teaching them not only academics but practical skills and values. *Id.* at 1. His own letter to the Court reflects that the lessons of this case have become part of that instruction, describing how he now speaks with his sons about judgment, responsibility, and the real-world consequences of decisions. Bryan Fleming Letter at 1.

Sherry also suffers from rheumatoid arthritis and a thyroid-related blood condition, and Bryan has been her primary source of support and care in managing those challenges. Sherry Fleming Letter at 1. His mother describes him as a devoted husband and father who has never raised his voice in anger at his sons and who leads his family by example. Barbara Fleming Letter.

### C. Employment and Self-Sufficiency.

Mr. Fleming is a self-taught computer programmer who has been writing code since the age of five. PSR ¶ 72. He attended the University of Michigan and came within one class of completing his bachelor's degree. *Id.* ¶ 70. From 2005 through 2020, he worked as a programmer and web developer at Detroit Diesel, ultimately earning $105,000 per year. *Id.* ¶ 76. In 2019, he completed a Salesforce administrator certification, and in 2023 he completed a LinkedIn marketing certification, demonstrating a continued commitment to professional development. *Id.* ¶¶ 73-4. He has remained employed and has been fully compliant with all conditions of pretrial supervision. *Id.* ¶ 22.

### D. Current Living Circumstances.

Following the execution of the search warrant at the family's home in Michigan, the Flemings made the difficult decision to sell their home and relocate somewhere that would not carry the same painful associations. Bryan Fleming

Letter at 1. They used the proceeds from that sale to purchase an older boat which now serves as the family's residence. The family has been actively working on the vessel themselves to make it livable. The boat was purchased with home sale proceeds and investment earnings that had nothing to do with the offense. Its value is commensurate with a nice single-family home in the San Diego region, but not an extravagant mansion, and it is actively maintained by the family of four who live there full-time.

## II. THE OFFENSE, THE COLLATERAL CONSEQUENCES, AND POST-OFFENSE REHABILITATION.

### A. The Offense.

While the product at issue was originally developed to monitor children and employees and it continued to be marketed for those lawful purposes, Mr. Fleming expanded its marketing to include the monitoring of spouses and partners without their knowledge or consent, believing it would increase revenue and allow his wife to remain at home with their sons. When he learned this use was illegal, he immediately stopped such marketing.

Mr. Fleming's own letter to the Court does not minimize what he did. He acknowledges that his conduct contributed to serious invasions of privacy, and that while he viewed the product primarily as a business and technical tool, he should have better appreciated its real-world impact on others. That failure in judgment, he writes, is his alone, and the experience has had a lasting effect on how he thinks — both personally and professionally.

### B. Collateral Consequences.

The consequences Mr. Fleming has already suffered are significant and ongoing. The execution of the search warrant at the family home was, as Sherry Fleming writes, one of the most difficult experiences the family has ever endured — devastating to her, frightening and confusing to their children. Sherry Fleming Letter. The family sold the home they had lived in for many years. Bryan Fleming

Letter. They have rebuilt their lives under conditions of uncertainty, financial constraint, and now the ongoing stigma of being a felon.

Beyond the disruption to the family, Mr. Fleming was subjected to significant negative press coverage in connection with this case. The reputational harm from public exposure of this kind is a recognized collateral consequence that this Court may appropriately weigh under § 3553(a).

### C. Cooperation with Law Enforcement.

While agents were still executing the search warrant at his home on December 7, 2022, Mr. Fleming voluntarily agreed to speak with agents and answered all their questions. Before any charges had been filed, before any plea negotiations had begun, and without any promise of benefit, Mr. Fleming was cooperative. He also committed on the spot to cease advertising and selling the application to persons intending to spy on spouses or partners. This was the conduct of a man who suddenly grasped the gravity of what he had done and chose transparency over self-protection.

### D. Post-Offense Rehabilitation.

Mr. Fleming has since rebuilt his livelihood through consulting work entirely unrelated to the conduct at issue. Bryan Fleming Letter. Sherry Fleming describes the transformation in her husband in the aftermath of the raid as genuine and complete. She writes that he did not try to justify anything or focus on the financial impact, but was instead deeply affected by the realization that something connected to his business could have harmed other people — and that she could see that realization genuinely changed how he viewed everything. Sherry Fleming Letter.

### III.    THE APPROPRIATE SENTENCE.

### A. The Guidelines Recommend a Non-Custodial Sentence.

The Sentencing Guidelines, as correctly calculated by the Probation Office, yield a Total Offense Level of 5 and a Criminal History Category of I, producing an advisory imprisonment range of zero to six months. That range falls within Zone

A of the Sentencing Table. Because Mr. Fleming received the adjustment for Zero-Point Offenders under USSG § 4C1.1 and his guideline range falls within Zone A, the Sentencing Commission's policy commentary expressly provides that a sentence other than imprisonment is *generally appropriate*. USSG § 5C1.1, comment. (n.9); *see also* 28 U.S.C. § 994(j).

Mr. Fleming is exactly the kind of first-time, zero-point offender for whom the Sentencing Commission has determined that incarceration is generally unwarranted. He presents no risk of recurrence — the business is gone, the product is gone, and the man who built them has undergone a genuine and documented transformation in how he understands his obligations to others.

The joint recommendation for time-served is sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter future conduct. Incarceration would separate Mr. Fleming from his wife, who depends on his support and care in managing serious health conditions, and from his two sons, now 18 and 17, at a critical juncture in their development and education. Adding a period of imprisonment would add nothing to achieve any sentencing objective that has not already been served.

With respect to supervised release, the defense requests that the Court impose a term of one year rather than the three years recommended by the Probation Office. Mr. Fleming presents a minimal risk of reoffense and has already demonstrated years of lawful conduct.

The Probation Office recommends a fine of $9,500, at the top of the guideline range. The defense respectfully requests that the Court follow the joint recommendation that the Court impose no fine. Mr. Fleming lost substantial earnings and changed his life dramatically in the wake of learning of his crime.

**B. The Court Should Not Hold a Further Hearing on Restitution.**

The government has indicated it wishes to continue the restitution component of sentencing, but the procedural predicate for that relief has not been met and the

time to meet it has passed. Under 18 U.S.C. § 3664(d)(5), a continuance of the restitution determination is available only where the victim's losses are not ascertainable by the date that is ten days prior to sentencing. That deadline has already passed and the government does not claim that victim losses are impossible to ascertain *or that it anticipates any request for restitution at all*. It has represented only that it wants more time. That is not the standard the statute requires, and it is not a basis for the relief the government seeks.

Insofar as the Court does extend time for further restitution proceedings, Mr. Fleming requests the Court set a deadline for written submissions and determine whether a hearing is necessary thereafter rather than require Mr. Fleming travel across the country for potentially no new information on restitution.

## IV.   CONCLUSION

Bryan Fleming is a 54-year-old first-time offender who has accepted full responsibility, cooperated with the government, shut down this business, and spent the period since the execution of the search warrant rebuilding his life in a manner that is lawful, transparent, and centered on his family. The Sentencing Guidelines call for a non-custodial sentence. The § 3553(a) factors, properly weighed, support a sentence of time served, one year of supervised release, no fine, and the mandatory $100 special assessment. The defense respectfully requests that the Court impose that sentence – the same sentence requested by the United States.

Respectfully Submitted,

**McKENZIE SCOTT, PC**

Dated: March 27, 2026          By:   */s/Marcus S. Bourassa*
                                               MARCUS S. BOURASSA
                                               *Attorneys for Defendant*
                                               *Bryan Fleming*

BRYAN FLEMING'S SENTENCING MEMORANDUM